UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| RONALD PHILLIP FERRY ) | Case No. 08-12483-SSM |
| ) | Chapter 7 |
| Debtor ) | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS**

Before the court is the amended motion of Richard Norell, an unsecured creditor, to dismiss the bankruptcy case of Ronald Phillip Ferry as a bad-faith filing.  An evidentiary hearing was held on September 22, 2008, and was continued to October 7, 2008, for a ruling.  The debtor was present in person at the evidentiary hearing and was represented by counsel, as was Mr. Norell.  At the continued hearing, the court ruled from the bench that the motion would be denied and now issues this opinion and order to explain more fully, for the benefit of the parties and any appellate court, the reasons for the court's ruling.

Background

Ronald Phillip Ferry ("the debtor") is a television news director and producer earning $75,252 a year.  He filed a voluntary petition in this court on May 5, 2008, for relief under chapter 7 of the Bankruptcy Code, listing $65,093 in unsecured debts and an "unknown" amount of priority tax debts.

This is the fourth bankruptcy case filed by the debtor, either alone or with his former wife, Sandra M. Beard, in the last eleven years.  A joint chapter 7 case was filed in October 1997 and resulted in the granting of a discharge.  A follow-on joint chapter 13 case was filed in June

1

1998 but was voluntarily dismissed in November 2001.  On June 11, 2002, the debtor filed a chapter 13 case in which he obtained confirmation of a plan providing for 100% repayment of his unsecured debts.  Upon completion of the payments required by the plan, he received a discharge in March 2006.  The trustee's final report and account shows full payment of filed unsecured claims totaling $12,725.

The present case was filed three years and eleven months after the chapter 13 case.  According to the debtor's testimony, the purpose of both chapter 13 filings was to save a house he owned jointly with his now-former wife in Emerald Isle, North Carolina.  In the second chapter 13 case, the holder of the deed of trust obtained relief from the automatic stay as to the debtor but agreed to terms with the wife for curing the arrearage.  She has made the mortgage payments since then and continues to live in the property.  The present chapter 7 filing, the debtor testified, resulted because he was laid off by his prior employer and obtained a significantly lower-paying job with his present employer, which—because of the level of spousal and child support he has to pay—left him unable to pay his debts.

Mr. Norell testified that he loaned the debtor $17,000.00—evidenced by a promissory note—in October 2001 to enable the debtor to purchase property.  The debtor did not, however, list Mr. Norell as a creditor in the chapter 13 case filed eight months later, and Mr. Norell testified he did not learn of the filing until late 2002 after the claims bar date.  There had been some discussions—the precise timing of which is unclear from the testimony—of Mr. Norell having the use of additional space in a house he jointly owned with the debtor's father in St.

Mary's County, Maryland, in exchange for the remaining balance due on the note.[1]  Those discussions never resulted in a formal agreement, and in 2007 Mr. Norell obtained a judgment against the debtor for $25,000 in St. Mary's County, Maryland, after the state court rejected the debtor's statute of limitations defense.  The debtor testified that he did not list Mr. Norell as a creditor in the 2002 case because he believed the debt had been resolved.

In 2001, Mr. Norell bought out the debtor's wife's one-half interest in a 26-foot Chris Craft cabin cruiser that until recently was kept at the St. Mary's County property.  The debtor did not list the boat on his schedules, either in the present case or the 2002 case.  His testimony is that he did not do so because the considered the boat—which was stored on land and did not have a working engine—as a "project boat" without significant value.  The debtor further testified that at some point—precisely when was not made clear—he had the boat hauled away.  For his part, Mr. Norell testified that he had not been able to determine the location of the boat from the debtor.

At the time the present case was filed, the debtor remained, and for that matter still remains, a one-half record owner of property in Emerald Isle, North Carolina, in which his wife and children live.  He did not, however, list the property on his schedules in this case (although it

---

[1]  Mr. Norell testified that he contributed $100,000 of the $775,000 purchase price for the property and therefore owned an approximately 13% interest.  The remaining interest was titled in the name of the debtor's father, who then leased the property to the debtor for an amount the debtor testified was slightly more than the amount of the mortgage.  Apparently, title was taken in the name of the debtor's father rather than the debtor because of the debtor's bad credit rating.  However, the debtor resided at the property.  Whether the debtor's father also resided there was unclear from the testimony.  In any event, at some point not clearly disclosed by the testimony, the property went into foreclosure and was purchased at the foreclosure sale by Mr. Norell.  It was not clear from the testimony whether this was the same property for which Mr. Norell made the $17,000.00 loan to the debtor.

3

was listed in the 2002 case). He testified that he did not list an interest in the property because he was required by the divorce decree to convey his half-interest to his wife by quit-claim deed when she refinanced the property (which however has not yet occurred), and therefore considered that he had no actual interest in the property. No evidence was presented as to the current value of the property or the amount of the mortgage debt or other liens against it.

Mr. Norell appeared at the meeting of creditors on June 12, 2008, and questioned the debtor concerning the boat and the Emerald Isle property. The debtor acknowledged owning them and agreed to amend his schedules to include them. The trustee did not wait for amended schedules, however, but filed a report of no distribution on June 13, 2008. The debtor, for reasons that are unexplained, did not actually file amended schedules until July 16, 2008, one week after Mr. Norell filed his motion to dismiss the case.

## Discussion

### A.

As originally filed, the motion to dismiss did not cite a statutory basis for relief other than § 727(a)(8), Bankruptcy Code, which provides that a chapter 7 debtor is not entitled to a discharge if he or she has received a chapter 7 or chapter 11 discharge in a case filed within eight years of the present case. By amended motion filed after the court set an evidentiary hearing, Mr. Norell has abandoned that assertion—which plainly does not apply because the debtor's prior case was a chapter 13 case, not a chapter 7 or chapter 11 case—and now relies on § 707(a), Bankruptcy Code, in conjunction with § 727(a)(9), as allowing the case to be dismissed as a bad faith filing.

Section 707(a) of the Bankruptcy Code allows a chapter 7 case to be dismissed "for cause," including unreasonable delay by the debtor prejudicial to creditors, nonpayment of filing fees, and failure to file required statements, lists and schedules.[2] Because the word "including" is not exclusive—*see* § 102(3), Bankruptcy Code—courts have recognized that cases may be dismissed on grounds other than those specifically enumerated in § 707(a), and in particular have held that a case may be dismissed if it was not filed in good faith. *McDow v. Smith*, 295 B.R. 69, 75 (E.D. Va. 2003) ("[A] debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal in the sound discretion of the bankruptcy court."). As the district court for this district has explained, "In general, a debtor's 'bad faith' or 'lack of good faith' is evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *Id*. at 74.

B.

In addition to § 707(a), Mr. Norell relies on § 727(a)(9), Bankruptcy Code, which provides that a debtor cannot receive a chapter 7 discharge if he or she has been granted a chapter 12 or chapter 13 discharge in a case filed within four years of the present case *unless*

---

[2] A case may also be dismissed under § 707(b), Bankruptcy Code, if the debtor's debts are primarily consumer debts and the court determines that the filing is an abuse of chapter 7. § 707(b)(1), Bankruptcy Code.  Abuse is presumed if application of a statutory "means test" shows that the debtor could pay the greater of 25% or $10,000 of unsecured debts over five years through a chapter 13 plan. § 707(b)(2), Bankruptcy Code. If the presumption does not arise, or is rebutted, the case can be dismissed based either on a finding that the petition was filed in bad faith or on a finding that the totality of the debtor's financial situation demonstrates abuse. § 707(b)(3), Bankruptcy Code.  Only the United States Trustee (or the court on its own motion) may seek dismissal for abuse if the debtor's current monthly income is less than or equal to the state-wide median income for a household of the same size.  § 707(b)(6), Bankruptcy Code. Because Mr. Norell's motion does not cite to or rely on § 707(b), the court expresses no view as to whether it would independently provide a basis for dismissal of the case.

"payments under the plan in [the prior case] totaled at least 100% of the allowed unsecured claims in the case. . . ." This case, as noted, was filed one month shy of four years since the chapter 13 case was filed. The debtor points out, however, that allowed unsecured claims were paid at 100% in that case, thereby bringing him within the exception to the discharge bar. To this, Mr. Norell rejoins that creditors were paid 100 cents on the dollar only because he was not listed as a creditor and his claim was not included in the pot of claims that had to be paid. If his claim had been included, he argues, unsecured claims could not have been paid at 100 cents on the dollar, and the escape clause of § 727(a)(9) would not apply.

Although Mr. Norell puts forward an intriguing argument, he cites to no reported opinion adopting such a theory, and the court's own research has not uncovered one. In any event, there are several reasons why the court believes it cannot carry the day. First, it asks the court to read an additional condition into the statute that Congress did not include. It is not the province of the courts to expand legislative enactments beyond their express terms on the supposition that the legislature, had it thought about it, would have wanted it to apply. Second, even assuming that the bar to discharge ought to be applied in those situations in which the debtor intentionally omits a particular creditor in order to engineer a 100% payout to the other creditors and to set up a situation in which the omitted creditor's claim could later be discharged, the evidence simply does not show that this was the debtor's intent. The debtor may well have been negligent in assuming that the debt had somehow been resolved, but there is no evidence that he deliberately sought to exclude it from the chapter 13 bankruptcy. Indeed, the fact that Mr. Norell learned of the chapter 13 case in late 2002 but inexplicably waited until 2007 to bring suit on the note would tend to support a belief, even if mistaken, that the debt had gone away. The state court's

overruling of the statute-of-limitations defense is of course conclusive as to actual enforceability of the debt, but is not determinative as to the sincerity of the debtor's belief that the debt had been forgiven.

The most significant flaw in Mr. Norell's theory, however, is its unstated premise that a chapter 7 case must be dismissed if a debtor is not eligible for a discharge. Whether a case should be administered, and whether a debtor is entitled to a discharge, are different issues, governed by different statutes. The remedy, if a debtor is not entitled to a discharge, is to bring an adversary proceeding objecting to the granting of a discharge. § 727(c), Bankruptcy Code; Fed.R.Bankr.P. 4004(a). Where Congress has, as here, provided an express remedy, courts should be loath to entertain what amounts to an objection to discharge recast as a motion to dismiss for "cause." This is not to say that ineligibility for a discharge might not be a relevant consideration in determining whether a case had been filed in good faith, but only that inability to receive a discharge is not, standing alone, a sufficient basis for dismissing a chapter 7 case.[3]

C.

A similar analysis applies to the other grounds for dismissal urged by Mr. Norell. It is argued that the debtor's schedules omitted his half-interest in the North Carolina real estate and his half-interest in the Chris Craft boat, and that the debtor disposed of the boat without notice to Mr. Norell and removed appliances from the St. Mary's County property (which Mr. Norell ultimately purchased at foreclosure). These are serious issues, and the court has no wish to

---

[3] *See Branigan v. Bateman (In re Bateman)*, 515 F.3d 272 (4th Cir. 2008) (holding that a debtor's ineligibility to receive a discharge in a chapter 13 case does not require that the case be dismissed but is simply one factor to be considered in determining whether the debtor's plan should be confirmed).

belittle their significance. However, Congress has provided specific remedies to address situations in which the debtor has knowingly and fraudulently made a false oath or account in connection with a bankruptcy case or has committed a willful and malicious injury to property. Those remedies are, respectively, an objection to the debtor's discharge under § 727(a)(4), Bankruptcy Code, or a determination of dischargeability under § 523(a)(6), Bankruptcy Code. Both an objection to discharge and a determination of nondischargeability require the plaintiff to establish specific elements. A motion to dismiss a bankruptcy case should not be used as a substitute for a complaint objecting to the debtor's discharge or a complaint to determine dischargeability simply because the debtor's conduct may not fit exactly within one of the grounds Congress has provided for such relief.

D.

The question nevertheless remains whether, under all the circumstances, the evidence shows the debtor engaged in "deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *Smith*, 295 B.R. at 74. The debtor's motive for seeking relief under chapter 7 was a simple one: he had lost his job and his new position paid a significantly lower salary. Because of the monthly amount he is required to pay in spousal and child support, he could no longer pay his other debts on his reduced salary. The facts in this case simply do not resemble those in the cases cited by Mr. Norell. In *In re Marino*, 388 B.R 679 (Bankr. E.D. N.C. 2008), for example, the debtor, whose annual income was approximately $50,900, had incurred over $42,000 in unpaid legal fees to the law firm that represented her in a highly contentious divorce and equitable distribution proceeding. As a result of the law firm's efforts, the debtor received, among other assets, proceeds from her

husband's National Football League retirement savings plan and pension that were "rolled" into two IRA accounts containing approximately $257,000, all of which she claimed exempt. The bankruptcy petition was filed immediately prior to an arbitration hearing to hear the debtor's dispute as to the attorney's fees. The attorneys, upon learning of the debtor's intent to file bankruptcy, offered to settle their claim for $20,000, but the debtor went ahead and filed anyway. She had six other debts totaling $23,444. On those facts, the court concluded that the chapter 7 petition had not been filed in good faith:

> Here there was no sudden financial disaster. The debtor may not have realized the magnitude of the attorney's fees, but she knew the fees were accruing and she knew that the law firm anticipated payment from her equitable distribution recovery. The bankruptcy was timed to preclude the arbitration and its primary purpose is to avoid her obligation to the McGill firm. This is especially unfair to the law firm because their efforts contributed to her acquisition of exempt assets of more than $250,000 that were to be the source of payment. The law firm made a more than fair offer to settle the claim for $20,000, but even that was rejected by the debtor.

*Marino*, 388 B.R. at 683. In the present case, by contrast, the debtor is not attempting to stiff creditors whose efforts enabled him to acquire exempt assets that are more than sufficient to pay relatively modest debts. Additionally, even though Mr. Norell's state court judgment may have precipitated the bankruptcy filing, the court cannot find that the "primary purpose" of the filing was to thwart collection of his debt. Rather, it appears that the judgment was simply the final straw that rendered the debtor's already-difficult financial situation untenable. For a financially-strapped debtor to seek a fresh start through discharge of debts hardly constitutes an abuse of the bankruptcy system; rather, it is the very reason the system exists. The evidence here simply does not rise to the level of showing that the debtor has manipulated the system in a way that is abusive of its purpose or spirit.

O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. The amended motion to dismiss is denied.

2. The clerk will mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: _____          _____
                                     Stephen S. Mitchell
Alexandria, Virginia                 United States Bankruptcy Judge


Copies to:

Linda D. Regenhardt, Esq.
Gary & Regenhardt PLLC
8500 Leesburg Pike, Suite 7000
Vienna, VA 22182
Counsel for Richard Norell

Richard G. Hall, Esquire
7369 McWhorter Place
Suite 412
Annandale, VA 22003
Counsel for the debtor

Ronald Philip Ferry
2204 West Court Lane, #121
Herndon, VA 20170
Debtor

H. Jason Gold, Esquire
Wiley Rein LLP
7925 Jones Branch Drive
Suite 6200
McLean, VA 22102
Chapter 7 trustee